

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-13-00244-CR

BRANDON WAYNE EVANS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 124th District Court
Gregg County, Texas
Trial Court No. 42,993-B

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

# MEMORANDUM OPINION

During his jury trial for continuous violence against the family, Brandon Wayne Evans testified. To the State's question of whether he had a history of beating his wife, Mary Amanda Evans, Evans responded with a blanket denial, "I don't have a history of beating anybody up." After confirming that the blanket response was Evans' answer, the State asked Evans whether he had previously assaulted Nikki Lawing Benoit, Laura Russell, and Walter Wayne Lehmann. After Evans denied each allegation, the trial court allowed, over Evans' objections, each of the three to be called as rebuttal witnesses.

On appeal from his conviction,[1] Evans argues that the trial court erred in admitting evidence of those three prior assaults committed by him and in assessing attorney fees against him. We modify the trial court's judgment to remove the attorney-fee assessment and affirm it as modified, because (1) admitting evidence of prior assaults was not an abuse of discretion and (2) assessing attorney fees against the indigent Evans was error.

*(1)     Admitting Evidence of Prior Assaults Was Not an Abuse of Discretion*

Mary testified that she had been repeatedly choked and assaulted by Evans during the course of their marriage. Evans took the stand in his own defense and denied the abuse, claiming that Mary's accusations were fabricated. Evans added the blanket denial that he had never assaulted anyone. The question in this case is whether the trial court erred in allowing witnesses

---

[1] Evans was convicted by a jury of continuous violence against the family, a third degree felony. *See* TEX. PENAL CODE ANN. § 25.11(e) (West 2011). Evans pled true to the State's enhancement paragraph, was sentenced to ten years' imprisonment, and was ordered to pay $2,295.00 in court-appointed-attorney fees.

Benoit, Russell, and Lehmann to testify, for the limited purpose of assessing Evans' credibility, that they had been assaulted by Evans.

"Generally, evidence of extraneous offenses may not be used against the accused in a criminal trial." *Daggett v. State*, 187 S.W.3d 444, 450 (Tex. Crim. App. 2005). "While such evidence will almost always have probative value, it forces the defendant to defend himself against uncharged crimes as well as the charged offense, and encourages the jury to convict a defendant based on his bad character, rather than proof of the specific crime charged." *Id.* at 450–52.

"This does not mean, however, that such evidence will always be inadmissible." *Id.* at 452. "If a defendant testifies to a blanket statement of good conduct or character[,] . . . he may 'open the door' by leaving a false impression with the jury about a relevant act or character trait." *Id.*; *see Medina v. State*, 367 S.W.3d 470, 474 (Tex. App.—Texarkana 2012, no pet.) ("A defendant who testifies at trial may be impeached in the same manner as any other testifying witness.") (citing *Alexander v. State*, 740 S.W.2d 749, 763 (Tex. Crim. App. 1987)). In this circumstance, "evidence of an extraneous act that tends to rebut such testimony may be admissible to impeach the defendant." *Daggett*, 187 S.W.3d at 452 (citing *Prescott v. State*, 744 S.W.2d 128, 130–31 (Tex. Crim. App. 1988)); *see Clay v. State*, 390 S.W.3d 1, 14 (Tex. App.—Texarkana 2012, pet. ref'd); *Hudson v. State*, 112 S.W.3d 794, 801 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). "When such evidence is admitted, however, the jury may not consider it as substantive evidence of the charged offense, but only as evidence that the defendant misrepresented himself." *Daggett*, 187 S.W.3d at 452.

3

After the blanket statement by Evans, and the ensuing denials as to each of the three assault victims offered by the State, Evans objected and the trial court specifically allowed the three witnesses, with a limiting instruction.[2] Evans objected as each of the State's witnesses

[2]Here, during cross-examination, the State asked, "[Y]ou have a history of beating [Mary] up, even though you deny that, right?" In a nonresponsive answer, Evans offered, "I don't have a history of beating anybody up." After a brief, unrecorded bench conference, the State again asked, "I just want to make sure we're clear. You just said you don't have a history of beating anybody up, right?" Evans responded, "That's right."

After further direct examination, the State returned to the issue,

Q.      Yeah.  I have to do this, since you said it.  You said, "I don't have a history of beating anybody up," right?

A.      Right . . . .

Q.      You beat up and choked Nikki Benoit, correct?

A.      No, sir.

Q.      You attacked Wayne Lehmann with a bat, correct?

A.       No, sir.

Q.      And -- well, you have assault family violence for choking on a Laura Russell, correct?

A.      No, sir.

Q.      No, you pled "true" to that, my friend.  You -- you said you did that.

A.      I didn't choke her.

Q.      That's what the allegation is?

A.      That's what the allegation is.

Q.      So you pled "guilty" to something you didn't do, and then you pled "true' to it in this court, and you're saying you did not do those things?

A.      It wasn't like that, and I didn't beat anybody up.

Thereafter, the following discussion occurred outside of the jury's presence:

[Defense counsel]:  Your Honor, before we get started, I'd like to go on the record.  [The State] informed me of a number of witnesses the State intends to call in rebuttal to Mr. Evans'

4

took the stand, prompting the trial court to deliver the needed limiting instructions. Evans' ex-

---

testimony. And the defense wishes to object to the introduction of that testimony, even though it might be proper rebuttal evidence. And I agree with [the State] on that.

I also feel that the prejudicial effect of that evidence is going to substantially outweigh the probative value of that evidence. I have argued myself in front of this very jury that my client's a liar. [The State] has the prior conviction introduced into evidence of the assault family violence, so his necessity for bringing these other witnesses is nonexistent. And the prejudicial value to -- the prejudicial value against my client is tremendous. I think it will totally outweigh any other consideration in the jury's mind and totally eliminate the possibility that the jury might come back with a "not guilty" verdict . . . .

[The State]: Judge, obviously at this point we believe we have impeachment evidence. We also believe that the statement was actually volunteered by Mr. Evans while he was on the stand. I didn't try to box him into any kind of question that would have done this; I -- I simply asked a question about Mary Evans. And he said, "I don't have a history of beating anybody up," which then forced me into the line of questioning about his ex-wife, Nikki Benoit; Wayne Lehmann, and Laura Russell, all individuals who have had an assaultive relationship with Mr. Evans. They are all here, they were scheduled to testify in punishment. At this point in time, with a limiting instruction from the Court, I believe it is absolutely proper and necessary to call those people to show that Mr. Evans is lying and to impeach his testimony, especially since he's simply saying the key witness for the State was absolutely lying about everything. I think I have to do it, Judge. I don't see any way around it . . . .

THE COURT: Normally this type of testimony would not be admissible. However, the defendant, while being questioned by the State, -- on a very specific question, the State narrowed their question to assault -- being assaultive towards the alleged victim, Mary Evans. The defendant's answer, however, was that he has not been assaultive as to anybody.

Further, after approaching the Bench, the State went back and gave the defendant a chance to clarify. The defendant once again stated he has not been assaultive towards anybody.

Further then, the State, using proper impeachment, asked the defendant about each incident of the witnesses who were outside; and again, the defendant denied each and every one of those. So this goes towards the defendant's credibility. It's proper to impeach under these circumstances.

The Court is going to overrule the defendant's objection. The Court does not find under -- the Court finds that this evidence is relevant. Further, that its probative value is not substantially outweighed by the danger of unfair prejudice or confusion of the issues or misleading the jury or other considerations.

Further, the Court is going to instruct this jury that they can consider this purpose -- this testimony, not for whether the defendant is guilty of this offense or not, but solely for impeachment purposes of the defendant's credibility based on his denials on the stand that he committed these other offenses.

Further, the Court will also instruct that, in order to believe these -- this evidence for any other purpose, they'd have to believe it beyond a reasonable doubt.

So with that, we will proceed.

5

wife, Benoit, testified that, before their divorce in 2006, Evans had pushed her against a wall and choked her. Russell testified that, while on a date with Evans on or about April 8, 2010, Evans held her down by choking her, forcibly removed her clothing, and raped her.[3] Lehmann testified that Evans threatened him with a baseball bat and hit him with his hands. All of these witnesses described Evans' assaultive conduct against them in detail.

Although Evans agreed with the State that testimony from Benoit, Russell, Lehmann, and Foreman could constitute proper rebuttal evidence, Evans argues on appeal that the trial court erred in admitting specific instances of prior extraneous bad acts because the testimony constituted character evidence that was introduced by the State for the purpose of proving that Evans acted in conformity with his propensity for violence in assaulting Mary. *See* TEX. R. EVID. 404.[4] Evans also argues that the trial court erred because the probative value of the rebuttal evidence was substantially outweighed by the danger of unfair prejudice and the evidence confused the issues, misled the jury, and caused undue delay or needless presentation of cumulative evidence. *See* TEX. R. EVID. 403.

"We review the trial court's decision to admit or exclude evidence under an abuse-of-discretion standard, and we will not disturb the trial court's ruling if it is within the zone of reasonable disagreement." *Gotcher v. State*, 435 S.W.3d 367, 372 (Tex. App.—Texarkana 2014, no pet.) (citing *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007)). "Whether

---

[3]Robert Leigh Foreman, a Paris Police Department detective, testified that he met Russell in the hospital after the incident, retrieved Russell's telephone, and began impersonating Russell in text messages to Evans designed to secure Evans' admission to the sexual assault. The transcript of the text messages, admitted into evidence without objection, contained many inculpatory statements.

[4]The trial court recognized that such evidence is typically inadmissible. *See* TEX. R. EVID. 404, 608.

6

extraneous offense evidence has relevance apart from character conformity, as required by Rule 404(b), is a question for the trial court." *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). "An appellate court owes no less deference to the trial judge in making this decision than it affords him in making any other relevancy determination." *Id.* "When a trial court further decides not to exclude the evidence, finding that the probative value of the evidence is not outweighed by the danger of unfair prejudice, this decision too shall be given deference." *Id.*

We find the opinion in *Daggett* instructive. During trial for the sexual assault of a child, the defendant in *Daggett* testified, "I would not do something like that" and "I have never done anything of that sort with a sixteen year old girl, period." *Daggett*, 187 S.W.3d at 453. The Texas Court of Criminal Appeals found that the defendant had "opened the door," allowing the State to present "specific instances rebutting [the] false impression" left by the defendant by "offer[ing] extrinsic evidence rebutting the statement." *Id.* at n.24. In approving of the State's use of the testimony of a second child who had been sexually assaulted by the defendant, despite the lack of a conviction for the offense against the second child, the court wrote,

> Where, as here, the defendant's statement of good conduct is directly relevant to the offense charged -- i.e., "I would never have sexual relations with a minor" -- the opponent may both cross-examine the defendant and offer extrinsic evidence rebutting the statement. This is not impeachment on a collateral matter. The statement of good conduct goes to the "heart" of the matter
>
> . . . .
>
> Direct-examination testimony containing a broad disclaimer of misconduct sometimes can open the door for extrinsic evidence to contradict even though the contradictory evidence is otherwise inadmissible under Rules 404 and 608(b) . . . . This approach has been justified on the grounds that the witness should not be permitted to engage in perjury, mislead the trier of fact, and then shield himself from impeachment by asserting the collateral-fact doctrine.

7

*Id.* (quoting *United States v. Antonakeas*, 255 F.3d 714, 724–25 (9th Cir. 2001) (citation omitted).[5] While *Daggett* approved of the use of extraneous evidence of specific instances of conduct to rebut the false impression left by the defendant that he would never sexually assault a child, the court cautioned that such testimony could only be used in assessing the defendant's credibility, and that a limiting instruction to that effect was required. *Id.* at 254; *see Clay*, 390 S.W.3d at 13.

In *Bass v. State*, another sexual assault case, the defense made assertions during opening statement that the complainant's allegations were "pure fantasy" and were "contrary to [the preacher defendant's] character, not worthy of belief." *Bass v. State*, 270 S.W.3d 557, 559, 563 (Tex. Crim. App. 2008). In *Bass*, the Texas Court of Criminal Appeals found that the opening statement opened the door to the State's introduction of specific instances of extraneous misconduct in the form of testimony from others who had been molested by the preacher, even though no formal criminal charges had resulted in those cases. *Id.* at 559, 563.

Here, during opening statement, Evans' counsel told the jury that Mary had "come up with accusations" and that "the evidence [would] show that [Mary] Evans is a liar, a known liar." During cross-examination, Evans voluntarily offered the false statement that he had never beaten anyone. The State further questioned Evans about his false statement, giving him the

---

[5]"As a general rule, the defensive theory that the State wishes to rebut through the use of extraneous offense evidence must be elicited on direct examination by the defense and may not by elicited by 'prompting or maneuvering' by the State." *Roberts v. State*, 29 S.W.3d 596, 601 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd). (citing *Shipman v. State*, 604 S.W.2d 182, 185 (Tex. Crim. App. 1980); *Mares v. State*, 758 S.W.2d 932, 936 (Tex. App.—El Paso 1988, pet. ref'd)). "However, as an exception to this general rule, when a defendant voluntarily or nonresponsively testifies concerning extraneous matters on cross-examination, the State may correct any false impression presented by such answer." *Id.* (citing *Martinez v. State*, 728 S.W.2d 360, 361–62 (Tex. Crim. App. 1987); *Mills v. State*, 847 S.W.2d 453, 456 (Tex. App.—Eastland 1993, pet. ref'd); *Burrow v. State*, 668 S.W.2d 441, 443 (Tex. App.—El Paso 1984, no pet.)).

8

opportunity to correct it, which Evans failed to do. The trial court admitted the rebuttal testimony for the limited purpose of impeaching Evans' credibility. In light of *Daggett* and *Bass*, we cannot conclude that the trial court abused its discretion in allowing the rebuttal testimony based on the facts before us.[6]

Nevertheless, otherwise admissible evidence may be excluded. TEX. R. EVID. 403; *see Winegarner v. State*, 235 S.W.3d 787, 791 (Tex. Crim. App. 2007).[7] The Rule 403 balancing test is well known.

> In making a determination under Rule 403, a trial court must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against, (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the

---

[6]Evans also argues on appeal that the trial court erred in allowing Russell's testimony on the ground that it was cumulative because he had previously pled true to the State's enhancement paragraph, which alleged that he had been convicted of the assault against Russell. However, Evans testified that, although he had pled guilty to the prior offense, he had not choked or beaten Russell.

[7]On appeal, Evans argues that we should apply the following factors in determining whether the probative value of the impeachment evidence was substantially outweighed by the danger of unfair prejudice:

> (1) the impeachment value of the prior crime, (2) the temporal proximity of the past crime relative to the charged offense and the witness' subsequent history, (3) the similarity between the past crime and the offense being prosecuted, (4) the importance of the defendant's testimony, and (5) the importance of the credibility issue.

*Medina*, 367 S.W.3d at 474–75 (citing *Theus v. State*, 845 S.W.2d 874, 879 (Tex. Crim. App. 1992)). Although *Theus* established these factors in cases involving impeachment of a testifying defendant to correct a false impression that he has left with the jury, *Theus* dealt only with Texas Rule of Evidence 609. *Theus v. State*, 845 S.W.2d 874, 879 (Tex. Crim. App. 1992).

Here, Evans objected that the "prejudicial effect of that evidence is going to substantially outweigh the probative value of that evidence." Evans failed to specify whether he was objecting (1) to all of the evidence under Rule 403 or (2) to evidence related to his prior conviction under Rule 609. The trial court's ruling mirrored the language found in Rule 403—not Rule 609, which applies only to impeachment by introduction of a prior conviction. In any event, the conviction had already been admitted into evidence without objection.

9

> evidence will consume an inordinate amount of time or repeat evidence already admitted.

*Andrews v. State*, 429 S.W.3d 849, 865 (Tex. App.—Texarkana 2014, pet. ref'd) (citing *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006)). "We presume that the trial court conducted the necessary balancing test; the court's reasoning does not need to be announced for the record." *Medina*, 367 S.W.3d at 475. "Wide discretion is accorded the trial court's decision in weighing these factors, and the decision should be reversed on appeal only if there is a showing of a clear abuse of discretion." *Id.*

Mary testified that she was choked and beaten by Evans. Providing similar testimony, Benoit claimed that she was also choked and beaten by Evans during their marriage. Although Russell testified that she was choked by Evans, unlike the shared experiences of Mary and Benoit, Russell testified that she was also subjected to a sexual assault by Evans during a date. Evans did not choke Lehmann; he reportedly hit Lehmann and threatened him with a baseball bat. All three additional witnesses suggested Evans' propensity for violence. The probative force of the rebuttal testimony was strong because it served to make Mary's account more probable.

However, this case involved the testimony of only Evans and the State's witnesses, raising the importance of Evans' credibility. Thus, the trial court could have determined that the State's need for the evidence to impeach Evans' credibility was also great due to Evans' blanket denials. Because it gave the proper limiting instructions, the trial court could have determined that the rebuttal testimony would not tend to suggest a decision on an improper basis and would

10

not be given undue weight. Also, the time involved for the State to present the rebuttal testimony was short.[8]

Rule 403 "gives the trial court considerable latitude to assess the courtroom dynamics, to judge the tone and tenor of the witness' testimony and its impact on the jury, and to conduct the necessary balancing." *Winegarner*, 235 S.W.3d at 791. Rule 403 "allows different trial judges to reach different conclusions in different trials on substantially similar facts without abuse of discretion." *Id.* Here, affording the trial court the appropriate deference, we cannot say that it abused its discretion when conducting the Rule 403 balancing test. Accordingly, we overrule this point of error.

*(2)    Assessing Attorney Fees Against the Indigent Evans Was Error*

A claim of insufficient evidence to support court costs and court-appointed attorney fees is reviewable on direct appeal. *Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010). Evans complains of the trial court's order that he pay $2,295.00 in attorney fees.

Under Article 26.05(g) of the Texas Code of Criminal Procedure, a trial court has the authority to order the reimbursement of court-appointed attorney fees only if "the court determines that a defendant has financial resources that enable him to offset in part or in whole the costs of the legal services provided, including any expenses and costs." TEX. CODE CRIM. PROC. ANN. art. 26.05(g) (West Supp. 2014). "'[T]he defendant's financial resources and ability to pay are explicit critical elements in the trial court's determination of the propriety of ordering

---

[8]Out of a 200-page record taken of the trial on guilt/innocence, Benoit's direct testimony consisted of less than three pages, Russell's direct testimony consisted of approximately fifteen pages, and both Foreman's and Lehmann's direct testimony consisted of seven pages each.

reimbursement of costs and fees'" of legal services provided. *Armstrong v. State*, 340 S.W.3d 759, 765–66 (Tex. Crim. App. 2011) (quoting *Mayer*, 309 S.W.3d at 556).

The State concedes that Evans is indigent and that the record is devoid of any determination or finding by the trial court that he had financial resources or was otherwise able to pay the appointed attorney fees. *See Wiley v. State*, 410 S.W.3d 313, 317 (Tex. Crim. App. 2013). Thus, the assessment of attorney fees was erroneous and should be removed. *Cates v. State*, 402 S.W.3d 250, 252 (Tex. Crim. App. 2013); *see Mayer*, 309 S.W.3d 552; *Martin v. State*, 405 S.W.3d 944, 946–47 (Tex. App.—Texarkana 2013, no pet.). We modify the trial court's judgment by deleting the attorney fees from the judgment.

We affirm the trial court's judgment, as modified.


Josh R. Morriss, III
Chief Justice

Date Submitted:     September 10, 2014
Date Decided:       October 31, 2014

Do Not Publish

12