

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-23-00114-CR

TIMOTHY JAN LEFTWICH, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 5th District Court
Cass County, Texas
Trial Court No. 2021-F-00073

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

# MEMORANDUM OPINION

A Cass County jury found Timothy Jan Leftwich guilty of sexual assault. *See* TEX. PENAL CODE ANN. § 22.011(a)(1) (Supp.). The jury assessed Leftwich's punishment at twenty years' imprisonment, with a $10,000.00 fine. On appeal,[1] Leftwich raises two points of error: (1) the evidence is insufficient to show he did not have consent at the time of the alleged offense, and (2) the trial court erred in refusing to allow the complainant, Amy Fike,[2] to be cross-examined regarding her extramarital affair. Upon review, we disagree and affirm the trial court's judgment.

## I.    Factual Background

At trial, Fike and Leftwich both testified about their encounter on November 21, 2020. Their stories differed dramatically. In addition to their testimony, the trial court also admitted a bodycam audio recording from November 23, 2020, two days after the incident, when officers of the sheriff's department confronted Leftwich about Fike's allegations of sexual assault.

### A.    Fike's Testimony

On November 21, 2020, twenty-five-year-old Fike was delivering packages for Federal Express (FedEx) in Hughes Springs, Texas. While on her route, she delivered a package to Leftwich. When delivering the package to his house, she walked under the carport, stepped down from the carport, followed the path to the door, put the package at the door, knocked, and rang the doorbell. She then walked back to her van. While on her way back to her van, she saw

---

[1]In companion cause numbers 06-23-00115-CR and 06-23-00116-CR, Leftwich appeals two additional convictions for sexual assault arising from the same incident.

[2]The trial court used a pseudonym for the complainant, and we will use the same pseudonym.

2

a cat and "bent down to pet the cat." A male voice behind her asked if she "had a second." In response, she said, "Yes," because she believed the man may have had a package for pick up. Fike stated, "I just figured that's what the situation was, is they had a package. They did not say that they did. I just assumed."

Although hesitant, she approached the door of the house and "waited at the door." She "knocked and asked if he was there." He said, "[O]h, come in." She went inside and pushed, but did not fully close, the door behind her. She pushed the door because it was "a little bit chilly that day." Once in the doorway, Leftwich came "speed walking" towards her "in nothing but blue boxers." He then locked the door behind her.

Once the door was locked, Leftwich told Fike that "he had been watching" her for a while and that he wondered what she looked like under her clothes. He then started to touch Fike on her waist and below her waist and said that "he liked what he saw." Fike testified that she did not engage with him and was backed against the door. She crossed her arms in front of her while Leftwich continued to touch her below her waist and on her genital area and bottom. Leftwich also complimented her appearance while that was ongoing, and she responded with "thanks" and "oh, really."

Leftwich then told Fike he wanted to see what she looked like under her clothes, unsnapped her uniform pants, pulled her pants along with her underwear down to her thighs, and began touching her. She said that, during that exchange, she froze completely, did not touch Leftwich, and did not engage with him. Leftwich tried to force "his tongue down" her throat, but she turned her head multiple times as he was doing that. At that point in time, Leftwich very

3

aggressively groped her, grabbed her bottom, and massaged her "genital area as well." With her underwear down, Leftwich placed his finger on her genitals but did not penetrate her. As he moved her to the bedroom, she held on to the doorway and "told him [she] needed to go" and "needed to get back to work." Leftwich then led her into the bedroom.

Once in the bedroom, Leftwich pulled her to the bed and turned her to face him. He then pulled her legs "into the air" and took his penis and began thrusting it between her "vaginal lip area to the point of ejaculation." After that, he went into the "bathroom that was in that same room, and he grabbed a red hand towel and brought it back to the bed where [she] was – to wipe [her] off, as well as himself." "After he wiped [her] off, [she] quickly pulled up [her] underwear and [her] pants[,] . . . went through the doorway," and started "fiddling with the lock" to leave the house. Leftwich made his way down to where she was, commented that would be their "little secret," and stated, "[W]e love our FedEx around here." Fike then left.

After her encounter with Leftwich, Fike called her brother, who was also a FedEx delivery driver in the area. She did not stop delivering on her route because then FedEx "would have been 2 [to] 3 hours behind on a light day." She did not contact the police that day. After she completed her deliveries, she headed back to the FedEx terminal in Texarkana, Arkansas. She did not tell anyone at the FedEx terminal what had happened. Once she departed from the terminal, she headed home. Later that day, Fike told her husband about her encounter with Leftwich.

The next day, she contacted her boss and told her boss that she would no longer be working for FedEx because she felt unsafe and was sexually assaulted while on her route. Fike

4

provided a statement to FedEx about the assault. Fike then contacted the police. She explained her one-day delay in reporting the incident as follows:

> I didn't want to be a case on a desk. I didn't want to put myself through any of this for nothing to happen. He's a man that has a nice house. He had tons of land. And in a small town, everyone knows everyone. And I didn't think anything would happen.

She denied having consented to Leftwich's sexual contact.

### B.    Leftwich's Testimony

At the time of trial, Leftwich was sixty-two years old, and he provided a very different version of events from November 21, 2020. He claims that his encounter with Fike was entirely consensual and that he did not "use any physical violence, any physical force, in the sexual activity with her." He testified that he and Fike had a prior casual relationship, interacting when she delivered packages to him. He described that relationship as follows: "It's always been friendly."

He testified that, on that morning, he was home alone relaxing in his boxers when he saw the FedEx van pull up to his driveway. As Fike was petting his dogs and cats, he asked her if she had a second. She said "sure" and entered his house. He told her, "I'm glad you're here." He testified that the following consensual interaction then occurred:

> Okay. I was standing there, and whenever I told her it was okay that, you know, I'm – it's okay that you're in. I went ahead and proceeded to ask her if she was married. She said yes. I also asked her if – or I asked her where was she from, and she told me Texarkana. And then I went ahead and asked her, I said, do you fool around? Do you mess around on your marriage? And she said it depends. Well, I set [sic] there a little – I stood there a little bit, and I said, well, would you mess with an older man? And she didn't say nothing. I said, would you mess with an older man like me? And I said, would you mess with me? Fool around? And she said, sure. Well, at that time, I stepped down. It was about two steps,

5

two to three steps to her. I stepped down closer to her, and I leaned in like I was going to kiss her, which she leaned into me. And we --. I mean, we kissed. We started kissing. It was consensual. And after we --. You know, we was kissing there. And yes, I was feeling. She told the story right. I was feeling of her behind. I was feeling of the front side of her. And I even went to try to unfasten her pants. And I couldn't unfasten them. But she reached down there and unfastened them herself. She pulled them down past her hips. And then that's when I backed up, and I looked at her, and I said, you look – I said, girl, you look good. And she said, thank you. And she told me also, she said, you're just being sweet. And I said, no. I said, you look good. And then that's whenever I asked her, I said, do you want to do this? I said, do you want to go ahead and take this further? So that's when we --. I shut the door all the way. I locked the door, because I --. If you go to my place, every – my gates are locked. All of my doors are locked. I keep them locked up. But anyway, we headed to the bedroom.

Leftwich admitted to kissing her vagina, watching her masturbate, and "messing" with himself until he ejaculated. He also admitted to getting a hand towel and cleaning up after himself.

Leftwich claimed that the interaction was consensual and that Fike never said "no" to him. Leftwich also testified that, while he did lock the door to his house, he was not holding her inside. He testified that he did not drag, pull, or force Fike into the bedroom. According to Leftwich, Fike did not refuse him, and she did not try to leave the bedroom. He testified that she was "masturbating" during the interaction, which led him to believe the interaction had to have been mutual.

### C.    Bodycam Audio Recording from November 23, 2020

Two days after the incident, officers of the sheriff's department confronted Leftwich about his interaction with Fike and executed a search warrant at his house. At the time of that interview, Leftwich was on the phone with his wife, and he remained on the phone with her during most of the interview. When the officer confronted him with Fike's allegations, he said, "[T]hat ain't true." He stated that all he could remember from that date was FedEx "dropping a

6

package off." He admitted to the officer that he did say "hello" to Fike when she was petting the dogs. He denied knowing who she was.

The officer asked him about wearing boxers in front of Fike. He denied coming to the door in only his boxers and stated he "always" had his "pants and shirts on." When directly asked if there was a consensual encounter between him and Fike, he stated, "I don't know anything about it, ma'am." Eventually, Leftwich disconnected the call with his wife and gave his phone to the officer pursuant to the search warrant. Even after his wife could no longer hear his conversation with the officer, he denied any sexual encounter with Fike, even a consensual one.

## II. There Was Legally Sufficient Evidence of No Consent

In evaluating legal sufficiency, we review all evidence in the light most favorable to the trial court's judgment to determine "whether any rational [jury] could have found the essential elements of [sexual assault under Section 22.011 of the Texas Penal Code] beyond a reasonable doubt." *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005).

Legal sufficiency is "measured by the elements of the offense as defined by the hypothetically correct jury charge." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

A person is guilty of sexual assault where that

person intentionally or knowingly:  (A) causes the penetration of the . . . sexual organ of another person by any means, without that person's consent; . . . (C) causes the sexual organ of another person, without that person's consent, to contact or penetrate the mouth . . . or sexual organ of another person, including the actor.

TEX. PENAL CODE ANN. §§ 22.011(a)(1)(A), (1)(C).  For either subsection (A) or (C), a lack of consent is required.  Under the present facts, the only element in dispute is whether there is legally sufficient evidence that Fike did not consent to the sexual interaction.  We find there is legally sufficient evidence.

Fike testified at trial that the sexual contact was non-consensual.  Fike testified that, although she did not directly stop the encounter because she was in shock, while he was moving her to the bedroom, she "told him [she] needed to go" and "needed to get back to work."  She testified that she did not reciprocate in his sexual advances.  Fike reported the assault to her husband, her employer, and the police within one day of the incident.  There was also a thirty-four-year age gap between Leftwich and Fike, with Fike being twenty-five years old at the time of the incident and Leftwich being fifty-nine years old.

In contrast, Leftwich's story changed as to whether any sexual encounter occurred and as to whether that encounter was consensual.  At first, when he was interviewed two days after the incident, he completely denied that any sexual interaction occurred.  At the time he was initially interviewed by officers of the sheriff's department, his wife was on the phone.  Thereafter, he was directed to turn off his phone and was no longer within his wife's hearing.  Even then, he still denied a sexual interaction and told the sheriff's officer there was not even a consensual encounter.  By the time of trial, Leftwich changed his version of events and admitted there was a

sexual encounter, but he then claimed that encounter was entirely consensual. On appeal, Leftwich asserts that Fike's conduct in his house indicated her "apparent consent" to the encounter.

At core, Leftwich contends that he should be believed and Fike should be disbelieved. That is a matter for the jury, not this Court: "[a]n appellate court cannot act as a thirteenth juror and make its own assessment of the evidence." *Arroyo v. State*, 559 S.W.3d 484, 487 (Tex. Crim. App. 2018). "When considering a claim of evidentiary insufficiency, we must keep in mind that a juror may choose to believe or disbelieve all, some, or none of the evidence presented." *Edward v. State*, 635 S.W.3d 649, 655 (Tex. Crim. App. 2021). "It does not matter whether the evidence was admitted by the State or the defense. It does not matter if the evidence was strong or weak, unimpeached or contradicted." *Jones v. State*, 984 S.W.2d 254, 257 (Tex. Crim. App. 1998).

Viewing these facts in a light most favorable to the jury's guilty verdict, a rational jury could have found this encounter was non-consensual, and there is legally sufficient evidence to support such a finding.

## III. The Trial Court Properly Excluded the Evidence of Fike's Prior Affair

As a part of Fike's testimony, she admitted to having an extramarital affair in 2018 with another individual, two years prior to the incident with Leftwich. That testimony was taken outside the presence of the jury and was sealed. Leftwich claims the trial court abused its discretion when it refused to allow him to cross-examine Fike in the presence of the jury on her

9

affair because it deprived him of the "opportunity to show her motive to lie about engaging in consensual sexual activity with him." We find that the trial court did not abuse its discretion.

In general, the victim's past sexual conduct is inadmissible in sexual-assault prosecutions. *See* TEX. R. EVID. 412(a). A trial court is, however, allowed to admit specific instances of that conduct if that evidence "relates to the victim's motive or bias." TEX. R. EVID. 412(b)(2)(C). For that evidence to be admitted, "the probative value of the evidence" must outweigh "the danger of unfair prejudice." TEX. R. EVID. 412(b)(3).

"We review the trial court's decision to admit or exclude [Rule 412] evidence under an abuse-of-discretion standard." *Gotcher v. State*, 435 S.W.3d 367, 372 (Tex. App.—Texarkana 2014, no pet.) (citing *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007); *Smith v. State*, 401 S.W.3d 915, 917 (Tex. App.—Texarkana 2013, pet. ref'd)); *see also Holloway v. State*, 751 S.W.2d 866, 869–70 (Tex. Crim. App. 1988) (applying the abuse of discretion standard to a trial court's decision to admit or exclude evidence under Article 21.13 of the Texas Penal Code, the precursor to Rule 412).

Leftwich claims Fike's past affair is evidence of her motive or bias because this is a "classic 'he said, she said'" case such that the "credibility of the parties was dispositive." Leftwich further argues that this "evidence would have provided a motivation for her to lie to her husband, explain why she did not immediately call [the] police or her husband[,] and why she did not want to call [the] police until the following day."

Upon review, even if the evidence of the past affair were somewhat probative of an alleged motive in claiming sexual assault and in delaying for one day in calling the police, we

10

cannot find that that probative value outweighs the danger of unfair prejudice such that the trial court abused its discretion. *See, e.g.*, *Gotcher*, 435 S.W.3d at 373–74. Where, as here, Fike's affair was two years prior to the events of 2020, did not involve or relate to Leftwich, and had completely concluded, such admission's probative value is largely outweighed by the prejudice to Fike. *See id.* at 373 (recognizing that "[i]n light of the policies underlying Rule 412, the unfair prejudice language contemplates prejudice not only to the State, but also to the victim, who will potentially be stigmatized if the defendant is able to introduce evidence of prior sexual behavior").

## IV. Disposition

We affirm the trial court's judgment.

Jeff Rambin
Justice

Date Submitted: January 31, 2024
Date Decided: March 1, 2024

Do Not Publish

11