ACCEPTED
01-15-00290-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
11/25/2015 9:05:01 PM
CHRISTOPHER PRINE
CLERK

**Cause No. 01-15-00290-CR**

IN THE COURT OF APPEALS
FOR THE
FIRST JUDICIAL DISTRICT OF TEXAS
AT HOUSTON

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
11/25/2015 9:05:01 PM
CHRISTOPHER A. PRINE
Clerk

**FERNANDO RAZO**,
Appellant,

v.

**THE STATE OF TEXAS**,
Appellee.

Appeal from Cause No. 1416480
In the 208th District of
Harris County, Texas

**APPELLANT'S BRIEF**

**CARMEN ROE**
TBN: 24048773
440 Louisiana, Suite 900
Houston, Texas 77002
713.236.7755 Phone
713.236.7756 Fax
carmen@carmenroe.com
ATTORNEY FOR APPELLANT

**T. BRENT MAYR**
TBN: 24037052
5300 Memorial Drive, Suite 750
Houston, Texas 77007
713.808.9613 Phone
713.808.9991 Fax
bmayr@bmayrlaw.com
ATTORNEY FOR APPELLANT

**ORAL ARGUMENT REQUESTED**

i

## IDENTIFICATION OF INTERESTED PARTIES

Pursuant to TEX. R. APP. P. 28.1(a), a complete list of the names and addresses of all interested parties is provided below so the members of this Honorable Court may at once determine whether they are disqualified to serve or should recuse themselves from participating in the decision of this case.

**Complainant, victim, or aggrieved party:**
Thatiana Ramirez

**Trial Counsel for Appellant:**
Carlos Rodriquez
Celene Beck
3601 Navigation Boulevard
Houston, Texas 77003

**Counsel on Appeal for Appellant:**
Carmen Roe
440 Louisiana, Suite 900
Houston, Texas 77002

T. Brent Mayr
5300 Memorial Drive, Suite 750
Houston, Texas 77007

**Trial Counsel for the State**:
Kyle Watkins & Alison Baimbridge
Harris County District Attorney's Office
1201 Franklin Street
Houston, Texas 77002

**Trial Judge**:
Judge Denise Collins
208th District Court
Harris County, Texas

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ............................................................................... v

STATEMENT REGARDING ORAL ARGUMENT ..................................... 1

STATEMENT OF THE CASE .................................................................... 1

POINTS OF ERROR ................................................................................... 2

SUMMARY OF THE ARGUMENT ......................................................... 3

STATEMENT OF THE FACTS…………………………………………….4

ARGUMENT AND AUTHORITIES............................................................ 9

POINT OF ERROR NUMBER ONE (RESTATED)................................... 9

> WHETHER THE TRIAL COURT COMMITTED REVERSIBLE
> ERROR BY EXCLUDING THE DECEDENT'S MARIJUANA
> EVIDENCE UNDER RULE 401.

POINT OF ERROR NUMBER TWO (RESTATED)…………….............9

> WHETHER THE TRIAL COURT COMMITTED REVERSIBLE
> ERROR BY EXCLUDING THE DECEDENT'S MARIJUANA
> EVIDENCE UNDER RULE 403.

 A. Pertinent Facts .................................................................................. 9

 B. Standard of Review…………………………………………………15

 C. The Trial Court Erroneously Excluded The Decedent's Marijuana

    Evidence Under Rule 401………………………………………….....16

 D. The Trial Court Erroneously Excluded The Decedent's Marijuana

    Evidence Under Rule 403…………………………………………….19

    1. The Evidence's Probative Value……………………………………...20

    2. The Potential to Create an Irrational Impression………………..…21

    3. Time Necessary to Develop the Evidence………………………22

    4. Appellant's Need for the Decedent's Marijuana Evidence……......23

 E. Exclusion of this Evidence Denied Appellant of His Constitutional

    Right to Present a Defense…………………………………………25

POINT OF ERROR NUMBER THREE (RESTATED)…………………..…26

WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY EXCLUDING THE DECEDENT'S TOXICOLOGY REPORT AS HEARSAY EVIDENCE THAT DID NOT MEET THE BUSINESS RECORD EXCEPTION

A. *Pertinent Facts*…………………………………………………..26

B. *Standard of Review*………………………………………….....29

C. *The Trial Court Erroneously Excluded the Decedent's Toxicology Report as Hearsay*…………………………………………..29

D. *Exclusion of this Evidence Denied Appellant of His Constitutional Right to a Defense*………………………………….….…31

CONCLUSION AND PRAYER………………………………..…34

CERTIFICATE OF SERVICE ........................................................ 35

CERTIFICATE OF COMPLIANCE............................................... 35

# INDEX OF AUTHORITIES

**CASES**                                                                                            **PAGE**

*Amunson v. State*, 928 S.W.2d 601, 605 (Tex.App.– San Antonio 1996)….16

*Bell v. State,* 877 S.W.2d 21 (Tex.App.-Dallas 1994) …..........................27

*Cruz v. State*, 122 S.W.3d 309 (Tex.App.-Houston [1st Dist.] 2003)…...17,18

*Durhamn v. State*, 956 S.W.2d 62 (Tex.App.Houston [1st Dist.], 1997)…...30

*Gigliobianco v. State*, 210 S.W.3d 637 (Tex.Crim.App.2006)……………..20

*Gotcher v. State*, 435 S.W.3d 367 (Tex.App.–Texarkana 2014)………….....18

*Henderson v. State*, 822 S.W.2d 171,

       (Tex.App.–Houston [14th Dist.] 1991)………………………………18

*Holmes v. South Carolina*, 547 U.S. 319 (2006)…………...…………….24

*Johnson v. State*, 939 S.W.2d 230 (Tex.App.—Waco 1997)…………….20,22

*Kelly v. State*, 321 S.W.3d 583

       (Tex.App.–Houston [14th Dist.] 2010)…………………………...16,22

*Manning v. State*, 114 S.W.3d 922 (Tex.Crim.App.2003)………………20,22

*Miller v. State*, 42 S.W.3d 343 (Tex.App.– Austin 2001)…………………..25

*Montgomery v. State*, 810 S.W.2d 372 (Tex.Crim.App.1990)…………..17,19

*Moses v. State*, 104 S.W.3d 622 (Tex.Crim.App.2003)…………………15,27

*Potier v. State*, 68 S.W.3d 657 (Tex.Crim.App.2002)………………………...24

*Powell v. State*, 63 S.W.3d 435 (Tex.Crim.App.2001)…………………15,27

*Saenz v. State*, No. 04-12-00238, 2015 WL 4773442

       (Tex.App.—Houston [14th Dist.] August 13, 2015)…………19,21,25

*State v. Mechler,* 153 S.W.3d 435 (Tex.Crim.App.2005)………………21,22

*Torres v. State*, 71 S.W.3d 758 (Tex.Crim.App.2002)……………... …17,18

*Wiley v. State*, 74 S.W.3d 399 (Tex.Crim.App.2002)…………………….24

## OTHER SOURCES

TEX.R.APP.P. 28.1(a)……………………………………………………ii

TEX.R.APP.P. 39.1…………………………………...…………….1

TEX. R. APP. P. 44.2……………………………...……….23

TEX. R. EVID. 401……………………………………………*passim*

TEX. R. EVID. 403……………………………………………*passim*

TEX. R. EVID. 803……………………………….………..…...28

## OTHER STATE SOURCES

WASH.REV.CODE § 46.61.502(1)(b)……………….…………14

COLO.REV.STAT. ANN. § 42–4–1301(6)(a)(IV) …………………………14

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument would assist this Court in its decision-making process because this case presents questions involving the exclusion of relevant evidence at trial, which denied Appellant the right to present a complete defense at trial, and therefore is warranted. *See* TEX. R. APP. P. 39.1.

## STATEMENT OF THE CASE

Appellant was charged with the felony offense of intoxication manslaughter in Cause No. 1416480 in the 208th District Court of Harris County, Texas. (1 CR 6). Appellant was found guilty by a jury, (1 CR 222), and sentenced to ten (10) years in the Texas Department of Criminal Justice Institution Division. (1 CR 236).

On March 16, 2015, Appellant filed a timely notice of appeal, (1 CR 243), and the trial court's certification of the right to appeal. (1 CR 242).

1

# POINTS OF ERROR

## POINT OF ERROR NUMBER ONE

WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY EXCLUDING THE DECEDENT'S MARIJUANA EVIDENCE UNDER RULE 401.

## POINT OF ERROR NUMBER TWO

WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY EXCLUDING THE DECEDENT'S MARIJUANA EVIDENCE UNDER RULE 403.

## POINT OF ERROR NUMBER THREE

WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY EXCLUDING THE DECEDENT'S TOXICOLOGY REPORT AS HEARSAY EVIDENCE THAT DID NOT MEET THE BUSINESS RECORD EXCEPTION.

## SUMMARY OF THE ARGUMENT

### I.

The trial court erred when it excluded the decedent's marijuana use based on relevance. The evidence was relevant to Appellant's concurrent causation defensive theory and the exclusion of this evidence is of a constitutional magnitude because it denied Appellant his right to present a defense.

### II.

The trial court erred when it excluded the decedent's marijuana evidence as unfairly prejudicial. Any prejudicial effect was not substantially outweighed by the probative value. The evidence was relevant to Appellant's defensive theory of concurrent causation. The exclusion of this evidence is of a constitutional magnitude because it denied Appellant his right to present a defense.

### III.

The trial court erred when it excluded the decedent's toxicology report as hearsay that did not meet the business records exception to the hearsay rule. The sponsoring witness supervised the process, and was also the custodian of records. The exclusion of this evidence is of a constitutional magnitude because it denied Appellant his right to present a defense.

# STATEMENT OF FACTS

In the evening hours of Super Bowl Sunday,[1] Appellant was arrested for intoxication manslaughter. Noe Moczygemba, a motorist traveling along West Bellfort Street on the night in question, testified to initiating a right hand turn and merging with Kirkwood Street's traffic traveling northbound. [3 RR 40]. "[N]ot even two seconds afterwards, this truck just passed [him] at a really high rate of speed and [shook his] truck.[2] You know, with the wind, it shook [his] truck from side-to-side." [3 RR 40]. Moczygemba further explained, "the truck just pass[ed] [him] real fast, and [he] was going right behind it, and that is when [he] saw the accident occur. [3 RR 41]. [He] was like two seconds behind that truck." [3 RR 41]. Moczygemba testified he did not see the decedent's vehicle enter the intersection because of the curvature in the road.[3] [3 RR 62].

According to the State's reconstructionist expert, Craig Sartor, Appellant's truck was traveling northbound on Kirkwood Street at 67 miles

---

[1] The incident occurred at or around 7:45 p.m. on February 2, 2014. [3 RR 17, 188].

[2] There are two lanes of traffic for northbound traffic on Kirkwood. [Ex. 164-67]. Moczygemba testified to being in the right lane when the truck passed him. [3 RR 59].

[3] Kevin Henry, a resident at Spring Grove and Kirkwood, testified that when a vehicle is stopped behind Spring Grove's stop sign, a wooden fence built along the curved roadside obstructed the driver's ability to see oncoming traffic on Kirkwood traveling northbound, the same direction Appellant was traveling in. [3 RR 105-6].

per hour. [5 RR 23].[4] The decedent's vehicle was traveling westbound on Plumpoint, a residential side street that intersects with Kirkwood. [5 RR 30-32]. According to Sartor, the decedent's vehicle attempted to travel southbound on Kirkwood by making a left hand turn from the stop sign on Plumpoint. [5 RR 30-32]. Sartor explained that although Kirkwood Street had a stop sign 22 feet from the curve line, the curvature in the road and solid wood fence limited a driver's line of sight. [5 RR 52]. A vehicle stopped at the stop sign would have a line of sight of 86 feet, whereas a vehicle aligned with the street's curve would improve its field of vision to 278 feet. [5 RR 28-32]. According to Sartor, the decedent's vehicle accelerated 12.39 feet per second, if stopped at the stop sign, or faster if the decedent's vehicle stopped at the street's curve.[5] [5 RR 54].

Sartor also testified to the distance a braking vehicle would travel before coming to a complete stop. He explained that a non-intoxicated driver's reaction time is 1.5 seconds. [5 RR 32]. Premised thereupon, Sartor calculated that a similarly situated non-intoxicated driver braking at 67 miles

---

[4] The Crash Data Recorder reflects Appellant's truck traveling 67 MPH. [5 RR 23]. One second before impact, the vehicle's speed reduces to 66 MPH, and in the half-second before impact, the vehicle's speed reduces to 60 MPH. [5 RR 23]. Because the Crash Data Recorder did not include a speed at the time of impact, Sartor assumed Appellant's speed to be 54 MPH. [5 RR 23].

[5] The vehicle's maximum acceleration is 14.7 feet per second. [5 RR 54].

per hour would travel 414 feet before coming to a complete stop, [5 RR 32-43], whereas a vehicle braking at 35 miles per hour would travel 149 feet before coming to a complete stop. [5 RR 32]. According to Sartor, a non-intoxicated and non-speeding driver would have avoided the accident since the line of sight for a vehicle aligned at the street curve is 278 feet. Sartor, however, did not know whether the decedent's vehicle was behind the stop sign, at the street curve, or even stopped before it crossed Kirkwood's northbound traffic, traveling at least 18 mph. [5 RR 25-6].

After the collision, Moczygemba testified he approached the decedent's vehicle, and while attempting to administer first aid, Appellant exited his vehicle and asked Moczygemba, "Hey, what happened? What happened over there?" [3 RR 54]. According to Mocyzgemba, Appellant initially denied operating the vehicle, but after he confronted Appellant about observing only him exit the truck, Appellant replied, "Well, I got insurance." [3 RR 54]. Mocyzgemba testified he stated "that is the least of your worries, man. This girl looks like she is dying," which allegedly prompted Appellant to start running toward a nearby gas station. [3 RR 54].[6]

---

[6]Mocyzgemba also testified to Appellant "screaming" on a phone. However, Mocyzgemba reserved this story, because no one, including any police officer, ever asked him about it. [3 RR 70].

Michael Buchanan, a passenger in another motor vehicle, was traveling southbound on Kirkwood when Appellant's truck passed his vehicle traveling northbound. [3 RR 51]. After hearing the collision, Buchanan turned his vehicle around, exited the vehicle, and approached the decedent's vehicle which had spun into the curb. [3 RR 72]. Moments later, Kevin Henry, who lived near the scene, joined Buchanan at the scene of the accident. Buchanan testified to seeing Appellant "stumbling down the street trying to run," at which point, Buchanan took off after him and called 911. [3 RR 75.]

After reaching Appellant in front of a nearby Conoco gas station, [3 RR 87], both Buchannan and Henry stood beside Appellant, who appeared "very incoherent. He was bleeding from the mouth, and did not look right in the state of mind." [3 RR 79, 100].

Officer Phuong Ngo was dispatched at 8:21 p.m. to investigate the crash scene and arrived at around 8:42 p.m. [3 RR 113]. Officer Ngo collected the airbag from the truck's driver's side door, [3 RR 119], as well as three cell phones. [3 RR 126].

Officer Claudine Washington was also dispatched to the scene of the accident and arrived around 8:00 p.m. [3 RR 132]. She testified to taking the measurements of where Appellant's vehicle collided with the decedent's which she stated was premised upon the impact occurring on the inside lane,

7

[3 RR 147]; she then changed the point of impact to the middle of the two lanes. [3 RR 147].

Officer David Ciers testified as the State's drug recognition and intoxication expert. [3 RR 149]. He arrived at the crash site somewhere between 9:30 and 9:40 p.m. He testified to Appellant demonstrating signs of intoxication. Two subsequent blood tests revealed a .192, [5 R 136], and .23 blood-alcohol concentration level. [5 RR 155]. Dr. Jeffrey Walterscheid testified that Appellant's blood alcohol concentration ranged between .24 and .32 at the time of impact. [5 RR 155-56].

The State's evidence included testimony from eleven witnesses: Noe Mocxygemba, [3 RR 36-72], Michael Buchanan, [3 RR 72-92], Kevin Henry [5 RR 93-109], Phuong Ngo [3 RR 110-129], Claudine Washington [3 RR 130, 148], David Ciers [3 RR 149-191, 4 RR 6-128]; Dwan Wilson [4 RR 128, 149]; Jeffrey Walterscheid, [4 RR 150-195, 5 RR 142-159], Craig Sartor [4 RR 196-207, 5 RR 11, 89], Alex John [5 RR 89-113], and Herbert Ramirez, [5 RR 114-142].

## ARGUMENT AND AUTHORITIES

### POINT OF ERROR NUMBER ONE (RESTATED)

WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY EXCLUDING THE DECEDENT'S MARIJUANA EVIDENCE UNDER RULE 401.

### POINT OF ERROR NUMBER TWO (RESTATED)

WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY EXCLUDING THE DECEDENT'S MARIJUANA EVIDENCE UNDER RULE 403.

### *A. Statement of Facts*

Appellant's trial concerned the single indicted offense of intoxication manslaughter. [1 CR 6]. Appellant's defensive theory of concurrent causation attempted to demonstrate that the decedent's actions of driving while under the influence of marijuana and failure to yield the right of way to Appellant were by themselves sufficient to cause her death, and Appellant's action of driving while intoxicated was, by itself, insufficient to cause her death, because even a sober driver would have struck and killed the decedent.[7] [4

---

[7] The reconstructionist testified to a driver's reaction time' being 1.5 seconds, which is then added onto the 2.8 seconds needed for a vehicle traveling 35 MPH to come to a complete stop. [5 RR 74]. The reconstructionist also stated that "[a] truck going 35 miles an hour could not stop in 1.5 seconds." [5 RR 60]. However, the reconstructionist also testified that the decedent's vehicle accelerating from the curve "would take [...] 1.5 seconds to reach from the edge of the curve at a stop to the point of impact." [5 RR 55-7]. If the decedent's vehicle began accelerating from the stop sign, then her vehicle would reach the same point of impact in 1 second. [5 RR 57-8].

RR 51, 65; 5 RR 193-6]. The trial court recognized Appellant's defensive theory, [4 RR 44-45], and even included a concurrent causation issue in its charge to the jury. [CR 219].

After the State elicited testimony from its drug recognition expert, Officer Ciers, [3 RR 150-2; 4 RR 141-2], Appellant attempted to present evidence to support the defensive theory of concurrent causation. On cross-examination, and in support of his concurrent causation defensive theory, Appellant attempted to introduce the decedent's marijuana evidence, in part, through Officer Ciers' expert testimony.[8] [4 RR 50].

In a hearing outside the jury's presence,[9] Appellant explained that Officer Ciers' testimony concerning the effects of marijuana and its technical meaning as it pertained to Appellant's concurrent causation defense was relevant and he intended to support it with the decedent's toxicology results

---

[8] The toxicology report used "Delta-9 tetrahydrocannobinol" [4 RR 47].

[9] Earlier in the day, the State filed, and trial court granted, the State's motion in limine that ordered "both the Defendant and counsel […] not to mention, reference, or attempt to elicit in any manner, whether before the jury or the venire, […] any mention of the motion in limine or the contents therein." [1 CR 193]. The contents of the State's motion pertained to the decedent's toxicology report, which reflected her use of marihuana prior to the incident in question. [1 CR 193-97]. In support of suppressing all evidence referencing the decedent's potential impairment, the State argued both that the evidence was not relevant under Texas Rules of Evidence Rule 401, and was also inadmissible under Texas Rules of Evidence 403. [1 CR 193]. The trial court granted the motion the same day it was filed. [1 CR 197].

10

that were part of her autopsy.[10] [4 RR 65]. The trial court, however, conditioned the evidence's relevancy upon Appellant's ability to procure a sponsoring witness for the toxicology report. [4 RR 68-9]. Toward this end, Appellant's counsel argued that either of the State's experts, Dr. Alex John, the assistant medical examiner that performed the decedent's autopsy, [5 RR 90]; or Jefferey Walterscheid, co-director of Harris County Forensic Institute's Toxicology Laboratory, [4 RR 152], could testify to the toxicology results. [4 RR 53-4].

Appellant also explained his strategy, in the event that the State objected when offering the toxicology report into evidence at trial:

> **Defense Counsel**: […] we were going to argue that it is admissible as much as the autopsy report is admissible.
>
> **The Court**: Well, that is incorrect. You can argue that.
>
> **Defense Counsel**: We are going to argue that and also to try to get it in as a certified document –
>
> **The Court**: I am not going to allow that either.
>
> **Defense Counsel**: -- In the regular course of business […].

[4 RR 66-7]. The trial court disagreed with Appellant, stating neither witness could sponsor the toxicology report because only "F. Shaw" performed the

---

[10] Appellant's counsel's attempted to develop in front of the jury testimony concerning the effects of marijuana, [4 RR 42-3], and also that it's technical term is "Delta-9 tetrahydrocannobinol" [4 RR 47-50].

analysis reflected therein. [4 RR 59, 67]. Therefore, and because F. Shaw was not under subpoena at the time, the trial court prohibited Appellant from eliciting through Officer Ciers any evidence relating to the effects of marijuana or its technical meaning, summarily finding "it is not relevant yet." [4 RR 69].[11]

The State also elicited testimony from Dr. Walterscheid,[12] the co-director of Harris County's Forensics' Institute's toxicology laboratory, where he worked for the last seven years. [5 RR 152]. Dr. Walterscheid explained that his duties at the institute included, *inter alia*, identifying certain drugs or alcohol that may contribute to intoxication in DWI suspects and sexual assault victims, as well as "a lot of consultations with pathologists figuring out causes of death in terms of like a toxic overdose." [4 RR 152].

Outside the jury's presence, Dr. Walterscheid testified that F. Shaw, the chemist who conducted the analysis, quit the forensic institute, and therefore "doesn't work for Harris County anymore." [4 RR 189]. Although Dr. Walterscheid did not physically conduct the decedent's blood test, Dr. Walterscheid testified that he served as the lab's expert reviewer, [4 RR 182,

---

[11] On the same day, Appellant filed a Motion Duces Tecum, subpoenaing both F. Shaw and Patricia Small. [2 CR 121-129].

[12] Dr. Walterscheid has a bachelor's of science degree in chemistry, a Ph.D. in immunology, a post-doctoral degree fellow training in cardiovascular medicine, and is also a board certified fellow of the American Board of Forensic Toxicology. [4 RR 151].

85], and that F. Shaw, the chemist who did conduct the test, properly followed all requisite policies and procedures and reflected accurate results. [4 RR 186-87].

After Dr. Walterscheid's testimony, Appellant reoffered the decedent's toxicology report which the State objected to, asserting it was hearsay. Appellant responded that the toxicology report qualified under the business record exception. [4 RR 187-88]. The trial court sustained the State's objection, concluding the report could only come into evidence through F. Shaw since she is the only one that performed the analysis. [4 RR 190-91].

At the conclusion of the hearing, Appellant again asked the trial court to permit him to introduce and develop in front of the jury the decedent's marijuana evidence, this time through Dr. Walterscheid's testimony. [4 RR 191]. Even though Dr. Walterscheid was able to identify the substance in the report as marijuana, and also describe its effects on the body while driving, [4 RR 192-93], the trial court prohibited Appellant from developing this testimony in front of the jury:

> **The Court:** "It is not relevant. You don't have any evidence of any marijuana ingestion in anything. You don't have any records. They are not in evidence."

[4 RR 193-94].

The next day, Dr. Walterscheid testified by teleconference, again outside the jury's presence. [5 RR 141-58]. During this line of questioning, Dr. Walterscheid testified to the effects of marijuana, and also to the results in the decedent's toxicology report. [5 RR 142-54]. Dr. Walterscheid explained that he could not determine whether a person is impaired simply by looking at the toxicology results. [5 RR 143] "[He] would have to have more information on, like, a driving behavior […] that might reveal signs of marijuana intoxication." [4 RR 143-44].

Dr. Walterscheid also testified to the results reflected in the decedent's toxicology report:

> [W]hen I look at a toxicology report like this; and I see that the Delta-9 is relatively high, ten times higher than what I would see normally in like a DWI suspect; but yet at the same time the metabolite is very, very low this tells me that it has just been taken and hasn't you know, come out of the blood yet and into the brain.

[4 RR 144].[13] Ultimately he refused to opine whether the decedent had any kind of impairment toxicity, since no officer observed her fail any portion of a field sobriety test. [4 RR 145-47]. Dr. Walterscheid explained that he would

---

[13] The record shows that the decedent had a THC-concentration of 13 ng/ml (+/- 3). [4 RR 63]. This would have made her legally intoxicated in other states that provide a *per se* limit for blood marihuana concentrations. *See* WASH. REV. CODE § 46.61.502(1)(b) (5.0 ng/ml of THC within two hours of driving is per se limit); COLO. REV. STAT. ANN. § 42–4–1301(6)(a)(IV) (5.0 ng/ml of THC gives permissible inference of being under the influence).

need more clues to support this determination, such as inappropriate accelerating, braking, or weaving. [4 RR 155-56].

In addition, Dr. Walterscheid testified to the effects of marijuana. He explained that after 60 minutes, marijuana is "really starting to affect their decision-making and their coordination and all of that." [4 RR 145]. He also testified that the decedent probably introduced the substance into her body an hour or two before the incident in question. [4 RR 148-49]. Although he could not say "for certain" whether she was impaired, Dr. Walterscheid did testify that he could not rule it out. [4 RR 150-2].

After Dr. Walterscheid's testimony, Appellant again asked the trial court to allow him to introduce and develop the decedent's marijuana evidence in the presence of the jury. [5 RR 157]. This time, the trial court concluded the testimony was relevant, but nevertheless excluded it as unduly prejudicial. [5 RR 157]. The trial court reasoned:

> **The Court:** […] I think that based on his statements about not knowing anything more than just these numbers, it would be tantamount to more speculation than giving some expert opinion that aid the jury in their deciding this case; and I do find that it is relevant; but I think that it would be more prejudicial than it would be probative, so I am not going to allow it, okay? All right.

[5 RR 157-58].

15

### B. *Standard of Review*

A trial court's evidentiary ruling is reviewed for an abuse of discretion. *Powell v. State*, 63 S.W.3d 435, 438 (Tex.Crim.App.2001). A trial court abuses its discretion when its decision falls outside the zone of reasonable disagreement. *Moses v. State*, 104 S.W.3d 622, 627 (Tex.Crim.App.2003).

### C. The Trial Court Erroneously Excluded The Decedent's Marijuana Evidence Under Rule 401

The trial court erroneously excluded evidence of the decedent's marijuana use under Rule 401, because Appellant's concurrent causation defensive theory, predicated upon the decedent driving while under the influence of marijuana, was a fact of consequence at his trial. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." *Kelly v. State*, 321 S.W.3d 583, 593 (Tex. App. – Houston [14th Dist.] 2010, no pet.). To be relevant, the decedent's marijuana use need only "provide a small nudge toward proving or disproving some fact of consequence." *Amunson v. State*, 928 S.W.2d 601, 605 (Tex.App.–San Antonio 1996, pet. ref'd). "Evidence merely tending to affect the probability of the truth or falsity of a fact in issue is logically relevant." *Montgomery v. State*, 810 S.W.2d 372, 376 (Tex.Crim.App.1990).

16

Appellant's defensive theory based on concurrent causation is made available by statute.[14] If the jury found the decedent's conduct clearly sufficient to cause the accident, and Appellant's conduct clearly insufficient, then Appellant would have been entitled to an acquittal. Officer Ciers' testimony concerning the effects of marijuana, as well as its technical meaning, was therefore relevant as they both related to Appellant's concurrent causation defense. [CR 219]. *See Torres v. State*, 71 S.W.3d 758, 760-762 & n. 4 (Tex.Crim.App.2002) (trial court erroneously excluded evidence of victim's violent past when offered to support his self defense theory); *Cruz v. State*, 122 S.W.3d 309, 313 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd) (trial court erroneously excluded evidence in support of alibi witness when defensive theory was misidentification).

Moreover, Dr. Walterscheid's testimony, similar to Officer Ciers', was also relevant to Appellant's concurrent causation defensive theory. Dr. Walterscheid's testimony identified the substance in the toxicology report as marijuana, [5 RR 142-54], and also testified to the drug's effects while operating a motor vehicle. [4 RR 186-98; 5 RR 144-157]. This testimony of the decedent's marijuana use, therefore, was not only relevant to Appellant's

---

[14] "A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, *unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient*." TEX. PENAL CODE. ANN. § 6.04(a) (West 2011) (emphasis added).

17

defensive theory, but also provided to the jury a possible explanation for the decedent's actions of driving through a stop sign and into Appellant's lane of traffic, all while failing to yield the right of way to Appellant traveling northbound on Kirkwood.

Furthermore, Dr. Walterscheid's testimony was admissible, separate and aside from the toxicology results' admissibility. *Henderson v. State*, 822 S.W.2d 171 (Tex.App.–Houston [14th Dist.] 1991) (supervising chemist's testimony about substance in toxicology report admissible, even though the results therein were analyzed by a non-testifying chemist). Finally, and in the event the State timely objected to speculation during Dr. Walterscheid testimony in front of the jury, the trial court, upon proper request, could have circumscribed any improper inferences through a limiting instruction. *Beam v. State*, 447 S.W.3d 401, 405 (Tex.App.—Houston [14th Dist.] 2011).

Therefore, the trial court erroneously excluded the decedent's marijuana use because it had the tendency to make the existence of Appellant's statutorily provided defensive theory more probable than without the evidence. *See Torres v. State*, 71 S.W.3d 758, 760-762 & n. 4 (Tex.Crim.App.2002)(trial court erroneously excluded evidence of victim's violent past when offered to support his defensive theory of self-defense); *Cruz v. State*, 122 S.W.3d 309, 313 (Tex.App.-Houston [1st Dist.] 2003, pet.

ref'd) (exclusion of evidence defendant had alibi where defense was misidentification was abuse of discretion; *Gotcher v. State*, 435 S.W.3d 367, 374 (Tex.App.–Texarkana 2014, no pet.) (trial court erroneously excluded evidence of prior sexual conduct between complainant and defendant when defense was consent); *Saenz v. State*, No. 04-12-00238, 2015 WL 4773442, at *5-6 (Tex.App.—Houston [14th Dist.] August 13, 2015, no pet.) (Trial court erroneously excluded Decedent's intoxication evidence when defensive theory was concurrent causation in intoxication manslaughter trial).

### D. The Trial Court Erroneously Excluded the Decedent's Marijuana Evidence Under Rule 403

The trial court also erroneously excluded the decedent's marijuana use under Rule 403. [4 RR 157]. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. TEX. R. EVID. 403. However, here the trial court expressly found the decedent's marijuana evidence relevant, [5 RR 157-58]. "Rule 403 favors admissibility of relevant evidence, and the presumption is that relevant evidence will be more probative than prejudicial." *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex.Crim.App.1990)(op. on. reh'g). Therefore, the trial court's discretion to exclude the evidence was limited to circumstances when "the probative value

of that evidence is *substantially* outweighed by the danger of unfair prejudice […],” *Id.* at 389 (emphasis added).

## 1. The Evidence's Probative Value

"The 'probative value' refers to the inherent probative force of an item of evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that item." *Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex.Crim.App.2006). Here, the evidence was highly probative, because it served to make the ultimate fact of consequence more or less probable than it would have been without it. *Manning v. State*, 114 S.W.3d 922, 928 (Tex.Crim.App.2003). More specifically, that the decedent's THC concentration in an amount "ten times higher than what [Dr. Walterscheid] would see normally," taken in conjunction with her vehicle's relatively fast acceleration into Appellant's lane of travel, while danger was present, may have resulted in the jury concluding that the decedent was under the influence during the night in question, and therefore "was clearly sufficient to produce the result and the conduct of [Appellant] clearly insufficient. *Johnson v. State*, 939 S.W.2d 230, 232 (Tex.App.—Waco 1997, pet. ref'd) (supp. op. on remand) (complainant's prior sexual activity evidence was probative because its exclusion denied accused evidence of a statutory defense provided by the

legislature); *See Saenz v. State*, No. 04-12-00238, 2015 WL 4773442 (Tex.App.—Houston [14th Dist.] August 13, 2015, no pet.) (same for concurrent causation defensive theory). Therefore, this factor weighs in favor of admissibility.

## 2. The Potential to Create an Irrational Impression

This factor concerns the evidence's danger of *unfair* prejudice, referring only to the evidence's tendency to confuse or mislead the jury into making a decision on grounds apart from proof of the crime charged. *State v. Mechler,* 153 S.W.3d 435 (Tex.Crim.App.2005). Because the trial court's charge to the jury included Appellant's defensive theory of concurrent causation, evidence of "[the decedent's] intoxication would not have confused the issues or misled the jury." *Saenz v. State*, No. 04-12-00238, 2015 WL 4773442, at *7 (Tex.App.—Houston [14th Dist.] August 13, 2015, no pet.). Therefore, this factor also weighs in favor of admissibility. *Johnson v. State*, 939 S.W.2d at 232 ("The State has not demonstrated how the [excluded] testimony in unfairly prejudicial to it, particularly in light of the fact that the defense to which the testimony was relevant was a statutory defense.").

### 3. Time Necessary to Develop the Evidence

This factor concerns the amount of time needed to develop the evidence, during which the jury will be distracted from considering the charged offense. The decedent's marijuana use related directly to Appellant's statutorily provided concurrent causation defensive theory. Thus, the jury "could not be distracted away from the charged offense regardless of the required time to present [this evidence]." *State v. Mechler*, 153 S.W.3d at 441. Therefore, this factor also weighs in favor of admissibility.

### 4. Appellant's Need for the Decedent's Marijuana Evidence

Appellant's paramount need for the decedent's marijuana evidence is self-evident. *Manning v. State,* 114 S.W.3d at 928. The decedent's marijuana use "went to the heart of [appellant's] defense' and "the trial court's exclusion of this evidence operated to effectively preclude appellant from presenting his defense." *Kelly. v. State*, 321 S.W.2d at 594-595. Indeed, the court's *carte blanche* exclusion of any marijuana testimony left the record devoid of any evidence to support Appellant's statutorily provided defensive theory—that the decedent's actions of driving while under the influence of marijuana and into Appellant's lane of travel with danger present were by themselves sufficient to cause her death, and Appellant's action of driving while intoxicated was, by itself, insufficient to cause her death, on the

grounds that even a sober driver would have struck and killed the decedent. *See Johnson v. State*, 939 S.W.2d at 232 (("Johnson's need for the [excluded] testimony to raise the defense of promiscuity was great – no other evidence of promiscuity is in the record."). Therefore, this factor also weighed in favor of admissibility.

Consequently, the trial court erroneously excluded the decedent's marijuana evidence because its admitted relevancy to Appellant's trial for the offense of intoxication manslaughter was not *substantially* outweighed by the danger of unfair prejudice, *Montgomery v. State*, 810 S.W.2d 372. 389 (Tex.Crim.App.1990, op. on reh'g) (emphasis supplied); *Saenz v. State*, No. 04-12-00238, 2015 WL 4773442, at *7 (Tex.App.—Houston [14th Dist.] August 13, 2015, no pet.) (Trial court erroneously excluded the decedent's toxicology results under Rule 403, because its prejudicial effects did not substantially outweigh its relevancy to the defendant's concurrent causation theory).

### E. Exclusion of This Evidence Denied Appellant His Constitutional Right to Present a Defense

When a trial court erroneously excludes evidence, this Court next reviews the error for harm. TEX. R. APP. P. 44.2. Non-constitutional error is reviewed under Texas Rules of Appellate Procedure 44.2(b). However, when the evidence erroneously excluded "effectively prevents the defendant from

presenting his defensive theory," *Wiley v. State*, 74 S.W.3d 399, 405 (Tex.Crim.App.2002), then the error is reviewed under Rule 44.2(a). *Potier v. State*, 68 S.W.3d 657, 655 (Tex. Crim.App.2002). This standard requires the Court to reverse the judgment unless a review of the entire record demonstrates beyond a reasonable doubt that the error did not contribute to the conviction or punishment. TEX. R. APP. P. 44.2(a).

The erroneous exclusion of the decedent's marijuana evidence denied Appellant his constitutional right to present a complete defense at trial. *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) ("Whether rooted directly in the Due Process Clause of the Fourteenth Amendment ... or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, ... the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'"). Therefore, this Court should review for harm under TEX. R. APP. P. 44.2(a). *Tate v. State*, 981 S.W.2d 189, 193 (Tex.Crim.App.1998) ("A jury cannot properly convict or acquit absent the opportunity to hear proffered testimony bearing upon a theory of defense and weigh its credibility along with other evidence in the case."). Because the trial court erroneously excluded the decedent's marijuana evidence, the jury was denied the opportunity to weigh it with that already admitted into evidence. *Saenz v. State*, No. 04-12-00238, 2015 WL 4773442, at *7

(Tex.App.—Houston [14th Dist.] August 13, 2015, no pet.) (Erroneous exclusion of Decedent's intoxication violated defendant's right to present a defense, resulting in reversible error).

Therefore, the error cannot be harmless beyond a reasonable doubt, because the jury may have concluded, for instance, that the reason the decedent acceleration to 18 mph, traveling from a stopped position behind an obscured stop sign to Appellant's lane of travel in 1.5 seconds, with danger present, was because the decedent was under the influence of marijuana while operating her vehicle. *Miller v. State*, 42 S.W.3d 343, 347 (Tex.App.–Austin 2001, pet. ref'd) ("Because appellant bore the burden of persuasion, the exclusion of testimony relevant to her defense was particularly damaging.").

## POINT OF ERROR NUMBER THREE (RESTATED)

WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY EXCLUDING THE DECEDENT'S TOXICOLOGY REPORT AS HEARSAY EVIDENCE THAT DID NOT MEET THE BUSINESS RECORD EXCEPTION.

### *A. Statement of Facts*

On March 12, 2015, the State elicited testimony from Dr. Alex John, the assistant medical examiner with the Harris County Institute of Forensic Sciences. [5 RR 90]. Dr. John testified that his duties predominantly concerned autopsies, where he would determine the cause and manner of deaths. [5 RR 91].

Dr. John conducted the decedent's autopsy, [5 RR 91], and also created her autopsy report, which the State proffered during direct examination. [8 RR 255-61]. Appellant objected to the admission of the autopsy report because it was not complete since the report excluded the toxicology results, which contained the same number as the autopsy report. [5 RR 95]. The trial court overruled Appellant's objection, finding that the medical examiner only drew the blood but did not conduct the toxicology testing, [5 RR 102], and therefore admitted the autopsy report without the attached toxicology results. [4 RR 96, 180-181].

26

On cross examination, Dr. John testified that his duties at HCIFS also included blood draws, [5 RR 103-4] and that they tested the blood within their office [5 RR 104] which he performed for the decedent's autopsy. [5 RR 103-4]. After establishing that the autopsy reports number shared the same number as the toxicology report, [5 RR 108-09], Appellant's counsel offered the decedent's excluded toxicology report into evidence. The Court rejected the offer, and explained:

> **Court:** There is no possible theory under which that lab report comes in other than through the person who did the actual analysis, period, end of story. I have made my ruling, so it makes little or no difference what number is attached to the toxicology report or whether it was part of the report. […]

> **Court:** There is no such thing as custodian of those records being allowed to testify to that. You have to be the person who performed the test.

[5 RR 110-111].

The State also elicited testimony from Dr. Walterscheid, the co-director of forensic science toxicology laboratory. Dr. Walterscheid testified that his duties as co-director of the toxicology laboratory included, *inter alia*, identifying certain drugs or alcohol that may contribute to intoxication in driving while intoxicated suspects and sexual assault victims, as well as "a lot

27

of consultations with pathologists figuring out causes of death in terms of like a toxic overdose." [4 RR 152].

Outside the jury's presence, Dr. Walterscheid testified that F. Shaw, the chemist who conducted the analysis, quit the forensic institute, and "doesn't work for Harris County anymore." [4 RR 189]. Although Dr. Walterscheid did not personally conduct a separate chemical analysis, Dr. Walterscheid testified that F. Shaw, the chemist who did, properly followed all requisite procedures. [4 RR 186-87].

Dr. Walterscheid also testified that he is the custodian of the decedent's toxicology report, [4 RR 181], which is kept on a regular basis at the lab's records department, [4 RR 182, 185], and is also prepared by someone with personal knowledge of the events recorded in them, at or near the time of the event recorded. It is the business of the laboratory to make and keep the records. [4 RR 181].

Dr. Walterscheid also testified that F. Shaw was unavailable because she no longer worked for Harris County, despite the forensic institute accepting Appellant's subpoena on her behalf, [2 CR 129-32], and her former employer being unaware of her current employment location. [4 RR 189].

After Dr. Walterscheid's testimony, Appellant reoffered the decedent's toxicology report into evidence, which the State objected to as hearsay. [5 RR

186-88]. Appellant argued the toxicology report qualified under the business record exception to the hearsay rule. [4 RR 188]. The trial court sustained the State's objection, concluding only F. Shaw could sponsor the report into evidence since she is the only one that performed the analysis. [5 RR 188-89].

## B. Standard of Review

A trial court's evidentiary ruling is reviewed for an abuse of discretion. *Powell v. State*, 63 S.W.3d 435, 438 (Tex.Crim.App.2001). A trial court abuses its discretion when its decision falls outside the zone of reasonable disagreement. *Moses v. State*, 104 S.W.3d 622, 627 (Tex.Crim.App.2003).

## C. The Trial Court Erroneously Excluded the Decedent's Toxicology Report as Hearsay

Here, the trial court abused its discretion when it excluded the decedent's toxicology report concluding it was admissible hearsay that did not qualify under the business record exception to the hearsay rule. Hearsay is a statement, other than one made by the declarant testifying at trial, offered to prove the truth of the matter asserted. *See* TEX. R. EVID. 801(d); *Bell v. State,* 877 S.W.2d 21, 24 (Tex. App.-Dallas 1994, pet. ref'd). Ordinarily, hearsay is not admissible at trial, TEX. R. EVID. 802, unless an exception to the rule is satisfied. TEX. R. EVID. 803. Hearsay evidence is admissible, for

instance, under Rule 803(6)—or, "the business record exception"—when the report is made at or near the time of the event they record and is made:

> by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation [.]

TEX. R. CRIM. EVID. 803(6). The necessary predicate for the introduction of a "business record" may be shown by either offering, (1) the testimony of a records custodian or other qualified witness, or (2) an affidavit that complies with Rule 902(10). *Id.*

Dr. Walterscheid is the co-director of forensic science toxicology laboratory, and testified to his familiarity with the decedent's laboratory results. [4 RR 152]. He is also the custodian of the report, [4 RR 181], which is kept on a regular basis in the lab, and are made by someone with personal knowledge of the events recorded in them, at or near the time of the event recorded. [4 RR 182, 185] *See Durhamn v. State*, 956 S.W.2d 62 (Tex.App.-Houston [1st Dist.], 1997, pet. ref'd.). It is also the business of the laboratory to make and keep records. [4 RR 181].

At the time the chemical analyses was done, Dr. Walterscheid as the lab's expert reviewer, personally reviewed the results, and verified the scientific accuracy of the data before releasing the report to be, ordinarily,

attached to the autopsy report. [4 RR 181-2, 184-85]. Although Dr. Walterscheid did not personally conduct the chemical analysis, F. Shaw, the chemist who did, was his subordinate. [5 RR 181, 84]. He also testified that F. Shaw followed all required procedures when creating the toxicology report. [4 RR 186-87]. *See Caw v. State*, 851 S.W.2d 322 (Tex.App.—El Paso 1993)(holding chemists employed by county forensic laboratory qualified under business exception, and therefore supervisor properly admitted toxicology report created by non-testifying chemist).

Therefore, the trial court erroneously excluded the decedent's toxicology report based on the State's hearsay objection, because the evidence was admissible under the business record exception since Dr. Walterscheid qualified as a sponsoring witness. *See Burchfield v. State,* No. 02-09-0083-CR, 2011 WL 56049 (Tex.App.—Fort Worth 6 January, 2011, pet. ref'd) (not designated for publication) (holding 803(6) satisfied by senior toxicologist in the same lab, even when not the custodian of the records).

### D. Exclusion of this Evidence Denied Appellant His Constitutional Right to Present a Defense

When a trial court erroneously excludes evidence, this Court reviews the error for harm. TEX. R. APP. P. 44.2. Non-constitutional error is reviewed under Texas Rules of Appellate Procedure 44.2(b), however, when the

evidence erroneously excluded "effectively prevents the defendant from presenting his defensive theory," *Wiley v. State*, 74 S.W.3d 399, 405 (Tex.Crim.App.2002), then the error is reviewed under Rule 44.2(a). *Potier v. State*, 68 S.W.3d 657, 655 (Tex. Crim.App.2002). This standard requires the Court to reverse the judgment unless a review of the entire record demonstrates beyond a reasonable doubt that the error did not contribute to the conviction or punishment. TEX. R. APP. P. 44.2(a).

The erroneous exclusion of the decedent's marijuana evidence denied Appellant his constitutional right to present a complete defense at trial. *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) ("Whether rooted directly in the Due Process Clause of the Fourteenth Amendment ... or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, ... the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'"). Therefore, this Court should review for harm under TEX. R. APP. P. 44.2(a). *Tate v. State*, 981 S.W.2d 189, 193 (Tex.Crim.App.1998) ("A jury cannot properly convict or acquit absent the opportunity to hear proffered testimony bearing upon a theory of defense and weigh its credibility along with other evidence in the case."). Because the trial court erroneously excluded the decedent's marijuana evidence, the jury was denied the opportunity to weigh it with that already admitted into

evidence. *Saenz v. State*, No. 04-12-00238, 2015 WL 4773442, at *7 (Tex.App.—Houston [14th Dist.] August 13, 2015, no pet.) (Erroneous exclusion of Decedent's intoxication violated defendant's right to present a defense, resulting in reversible error). Therefore, the error cannot be harmless beyond a reasonable doubt, because the jury may have concluded, for instance, that the reason the decedent acceleration to 18 mph, traveling from a stopped position behind an obscured stop sign to Appellant's lane of travel in 1.5 seconds, with danger present, was because the decedent was under the influence of marijuana while operating her vehicle. *Miller v. State*, 42 S.W.3d 343, 347 (Tex.App.– Austin 2001, pet. ref'd) ("Because appellant bore the burden of persuasion, the exclusion of testimony relevant to her defense was particularly damaging.").

For these reasons, the trial court abused its discretion in excluding the decedent's toxicology report, which denied Appellant the right to present a defense. Therefore this Court should remand for a new trial.

## CONCLUSION AND PRAYER

Appellant prays that this Honorable Court, reverse the trial court's ruling and remand for new trial.

33

**RESPECTFULLY SUBMITTED**,

*/s/ Carmen Roe*

_____

**CARMEN ROE**
TBN: 24048772
440 Louisiana, Suite 900
Houston, Texas 77002
713.236.7755
713.236.7756 FAX
carmen@carmenroe.com


*/s/ T. Brent Mayr*

_____

**T. BRENT MAYR**
TBN: 24037052
5300 Memorial Drive, Suite 750
Houston, Texas 77007
713.808.9613 Phone
713.808.9991 Fax
bmayr@bmayrlaw.com

**ATTORNEYS FOR APPELLANT**

## CERTIFICATE OF SERVICE

Pursuant to TEX.R.APP.P. 9.5(d), this Appellant's Brief was served upon opposing counsel, Harris County District Attorney's Office, by electronic filing on November 25, 2015.

*/s/ Carmen Roe*

_____

**CARMEN ROE**

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of TEX. R. APP. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of TEX. R. APP. P. 9.4(i), if applicable, because it contains 7,754 words, including any parts exempted by TEX. R. APP. P. 9.4(i)(1).

*/s/ Carmen Roe*

_____

**CARMEN ROE**